**THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **BARRY HONEA,** | : | |
| | : | |
| **Plaintiff,** | : | **Civil Action File No.** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF LAWRENCEVILLE;** | : | |
| **TIM WALLIS, in his individual and** | : | |
| **official capacity as Chief of Police;** | : | |
| **DAVID STILL, in his individual** | : | |
| **and official capacity as Mayor;  and** | : | |
| **CHUCK WARBINGTON, in his** | : | |
| **individual and official capacity as** | : | |
| **City Manager,** | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## <u>COMPLAINT</u>

Plaintiff, Barry Honea ("Plaintiff"), by and through counsel undersigned, files this Complaint against Defendant, City of Lawrenceville (the "City"), and Defendants, Chief of Police, Tim Wallis, Mayor of the City, David Still, and the City Manager, Chuck Warbington, each in their individual and official capacity ("Wallis" "Still" and "Warbington"), (the City, and these individuals are collectively referred to herein as "Defendants").  Plaintiff shows the Court, as follows:

- 1 -

**Authority**

**1.**

This cause of action arises under the provisions of 42 U.S.C. §§ 1983 and 1981 ("Section 1983" and "Section 1981"), seeking a remedy for sex and race discrimination and retaliation, all of which occurred during Plaintiff's employment with the City of Lawrenceville Police Department.

**2.**

All jurisdictional prerequisites to the institution of Plaintiff's lawsuit have been fulfilled.

**Parties, Jurisdiction and Venue**

**3.**

Plaintiff is a resident of the Northern District of Georgia.

**4.**

The City is a governmental entity and subdivision of the State of Georgia, and, is legally responsible for the City of Lawrenceville Police Department, a department operating within, and on behalf of, the City. The City's principal office address is 70 South Clayton Street, Lawrenceville, Georgia 30046. The City may be served via its City Manager, Chuck Warbington, at the same address.

**5.**

Wallis' principal office address is the City of Lawrenceville Police Department, 300 Jackson Street, Lawrenceville, Georgia 30046. Wallis may be served at the same address.

**6.**

Still's principal office address is City of Lawrenceville, 70 South Clayton Street, Lawrenceville, Georgia 30046. Still may be served at the same address.

**7.**

Warbington's principal office address is City of Lawrenceville, 70 South Clayton Street, Lawrenceville, Georgia 30046. Warbington may be served at the same address.

**8.**

Jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1337.

**9.**

Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district as Defendants exist within the Northern District of Georgia.

## Factual Allegations

**10.**

Plaintiff, a White male, was hired as a Police Officer in June of 2007, in the Lawrenceville Police Department (the "Department"), in Lawrenceville, Georgia. Plaintiff was so employed for 14 years, until his termination on March 15, 2021.

**11.**

On or about May 24, 2019, Defendants promoted Tawnya Gilovanni ("Gilovanni"), to the position of Captain, despite her being completely unqualified for the promotion.

**12.**

Several qualified applicants, including Plaintiff, were passed over for this promotion to Captain because of their male gender, and in the name of Defendants' stated desire for "diversity" within the Department.

**13.**

Plaintiff, an exceedingly well-qualified and experienced Lieutenant was passed over for promotion, and instead, the less-qualified, less-experienced female, Gilovanni, without competitive process and/or moving up through the ranks, was promoted to the position of Captain.

**14.**

Ironically, Barry Honea was Gilovanni's direct supervisor at the time of her promotion, and had direct knowledge of Gilovanni's abilities and qualifications, or more accurately, her lack thereof, for the position of Captain.

**15.**

Significantly, Defendants all participated in this discriminatory promotion process via the decision to discriminatorily promote Gilovanni, instead of Plaintiff, by promoting an unqualified female over a qualified male under the guise of "diversity."

**16.**

In other words, the failure to promote Plaintiff was on the basis of his sex and gender.

**17.**

On June 28, 2019, Wallis was quoted in an Atlanta Journal-Constitution article:

> Chief Wallis sees Gilovanni's promotion to captain as part of a larger effort to diversify the department. In the year since he took the chief job, he's added more women and people of color to the department's hiring boards. Of the nine people hired in the past year, six have been "diverse candidates" Wallis said.
>
> "Law enforcement agencies are trying to reflect what their communities are, and I think we have lagged behind in years past,"

Wallis said.  "We are moving forward with making the department reflective of what the community looks like."

**18.**

In a similar instance, in approximately 2018, a Black Corporal in the Gwinnett County Sheriff's Office, Myron Walker, was recruited by Warbington and Wallis to work for the Department.  Walker was brought into the Department as a Major and given the position of Assistant Police Chief.

**19.**

Just as was the case regarding Gilovanni, Plaintiff, and other qualified and eligible individuals within the Department, were passed over for the position of Assistant Police Chief.

**20.**

After Plaintiff's termination, Wallis was investigated for sexual harassment. During that investigation, Wallis admitted in an interview with the media, that (as was always suspected by most everyone in the Department), Gilovanni and Walker were promoted, in an effort by Wallis, Still and Warbington, to foster diversity in the Department, not because either one had earned their promotions, nor because they were the most qualified for the positions they were given.

**21.**

A Sergeant in the Department, Chris Ralston, was accused of having sexual relations while on duty, as well as other misconduct, all of which would be classified as time theft. Nevertheless, he was placed on administrative leave, with pay, and subsequently allowed to resign, instead of being terminated.

**22.**

While Plaintiff was Commander of the Criminal Investigations Division, he supervised Jessica Rowland, a female, crime scene technician, who consistently failed to properly manage or accomplish her responsibilities. She was counseled over and over again, but failed to improve or correct her poor performance. Nevertheless, she was not terminated, but eventually chose to resign.

**23.**

Two City employees, William Hillard, a Hispanic Planner in the Planning and Development Department, and David Thompson, a Code Enforcement Officer, were both accused of sleeping while on duty, which is classified as time theft. They both were counseled and given opportunities to correct their behavior, but their behavior continued. Nevertheless, they, too, were allowed to resign, rather than be terminated, and both were offered and received severance packages.

**24.**

Conversely, Plaintiff was accused of time theft on March 5, 2021, and placed on administrative leave, without pay.  He was given only 48 hours to defend himself against the allegation(s) and to respond to the City Manager.

**25.**

Plaintiff's response was nearly impossible to prepare, because he was refused the specifics and details concerning the allegation(s) against him.  As a result, the Union attorney, Raemona Byrd-Jones, could only address procedural issues, i.e., the Department's violations of its own policies.

**26.**

Plaintiff was not given any counseling, or any opportunity to correct the behavior he was accused of, but instead, on March 15, 2021, was summarily terminated.  No severance package was offered to Plaintiff, despite his 14 years of faithful service to the Department and the community.

**27.**

Warbington upheld the termination, despite the fact that Plaintiff and his counsel were essentially flying blind, knowing only the merest of details concerning the allegations they needed to defend against.

**28.**

Plaintiff was subjected to disparate treatment, i.e., termination without being counseled or given even one opportunity to correct his alleged infraction(s), which stands in stark contrast to the treatment and opportunities afforded to Chris Ralston, Jessica Rowland, William Hillard, and David Thompson.

**29.**

Oddly, Plaintiff, a White male, with a rock-solid work record, and having consistently received excellent Performance Reviews during his tenure of 14 years, was not offered any coaching or counseling, was not given any opportunity to correct the infractions he was accused of (as other City and Department personnel had been given), and was not afforded the processes of progressive discipline, as outlined in the City of Lawrenceville Personnel and Policy Manual.

**30.**

Instead, on March 15, 2021, Plaintiff was not afforded the opportunity to resign, but instead was summarily terminated, with the stain of a termination having the potential of negatively affecting his career, or even potentially ending his career in law enforcement.

**Plaintiff Speaks out Against "Diversity"**

**31.**

In approximately the three months preceding his termination, Plaintiff spoke out and opposed the discriminatory "diversity" policy, voicing his concerns to his supervisors.

**32.**

For example, Plaintiff told his Captain, Ryan Morgan, and Captain Byers, that Gilovanni was only promoted because she was a female and due to Chief Wallis' discriminatory desire to promote "diversity" in the department.

**33.**

Plaintiff also told Morgan that it was unfair that Gilovanni was not qualified as she was only a Detective and would need to jump two ranks over Sergeant and Lieutenant to the Captain position.

**34.**

Plaintiff told Ryan Morgan, and others, that Gilovanni was only promoted because she was female, that she was unqualified and she was incompetently handling the largest bureau in the agency and that no one could get things done because she was unable to make a decision based on her lack of supervisory experience, training and qualifications.

**35.**

Plaintiff also complained to Ryan Morgan that Wallis, and others, planned to promote Gilovanni all along even before the position was posted, and that the job description was being specially rewritten so that Gilovanni would qualify, despite her Detective rank and lack of other training and qualifications.

**36.**

Plaintiff also complained to Morgan and Captain Byers that Gilovanni was in over her head and that she was only promoted because she was a female.

**37.**

Plaintiff also complained to Morgan and Captain Byers that Gilovanni was only promoted for the sake of diversity, and that it was not working.

**38.**

Plaintiff complained that Gilovanni was not qualified for the position she was given.

**39.**

Plaintiff complained that he could not get things accomplished due to Gilovanni's inability to make necessary decisions.

**40.**

Plaintiff stated that if Wallis wanted a female on his command staff he should have posted the position and found a qualified applicant that could lead the bureau.

**41.**

Ryan Morgan agreed that Gilovanni had no business being a Captain.

**42.**

Plaintiff also complained to Ryan Morgan, Wallis, and others, that Gilovanni's promotion was solely for diversity due to the media being present at her promotion, and the articles that followed referencing the first female supervisor in the Department.

**43.**

Historically, media was never invited to promotions prior to Gilovanni's.

**44.**

In addition, prior to Gilaovanni's promotion, Captains positions (although appointed) were only open to Lieutenants to apply.

**45.**

Once Plaintiff was transferred to special operations, he began to work for Gilovanni directly, where she began closed-door meetings with him on multiple occasions.

**46.**

These conversations included her threateningly telling Plaintiff that she had been told that Plaintiff was trying to get her job and that he was basically unsupportive of her promotion.

**47.**

These meetings occurred between August 2020, when Plaintiff was transferred, and continued until January of 2021, just prior to Plaintiff being investigated.

**48.**

Because of Plaintiff's complaints, Defendants unfairly targeted Plaintiff for investigation and termination for alleged violations that other similarly situated co-workers were not so terminated for, or not even investigated.

## COUNT I
**(Gender and Race Discrimination in failure to promote –
42 U.S.C. §§ 1983 & 1981: Violation of Substantive Rights
Guaranteed by 42 U.S.C. § 1981, § 1983 *et seq.*, 14th Amendment of U.S.
Constitution – Against City of Lawrenceville, Wallis, Still and Warbington)**

**49.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**50.**

Defendants deprived the Plaintiff of rights secured by the Constitution or federal law and these deprivations occurred under color of state law.

**51.**

Defendants violated Plaintiff's federal rights protected by the federal Constitution and federal statutes and regulations under color of state law, ordinance regulation, custom or usage in violation of 42 U.S.C. § 1983.

**52.**

The conduct of Defendants in terminating or failing to promote Plaintiff based upon his gender and race is in violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**53.**

This violation of rights was proximately caused by Defendants who were acting under color of state law and local ordinances, regulations, customs and usages in violation of 42 U.S.C. § 1983.

**54.**

Defendants discriminated against Plaintiff in violation of 42 U.S.C. §§ 1981 and 1983, *et seq.,* by denying Plaintiff the same contractual rights to employment as enjoyed by female and Black or other minority employees of Defendants.

**55.**

Defendants further discriminated against Plaintiff in violation of 42 U.S.C. §§ 1981 and 1983, *et seq.,* by denying Plaintiff the equal benefits as those enjoyed by female and Black or other minority employees of Defendants.

**56.**

Acting through their officers and supervisors, Defendants engaged in the gender and race discrimination described in this Complaint intentionally or with reckless indifference to the rights of Plaintiff. Defendants' actions were done deliberately and with forethought to punish and discriminate against Plaintiff and were done with callous and/or reckless indifference to Plaintiff's federally protected rights.

**57.**

Defendants violated Plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause. Specifically, Defendants treated him differently, without sufficient cause, when they failed to promote him by giving the position to a completely unqualified female and/or excluding him completely because of his race.

**58.**

The City has municipal liability under 42 U.S.C. §§ 1983 & 1981 because Plaintiff shows (1) that his Constitutional rights were violated; (2) that the City had

a custom or policy (i.e. the pursuit of "diversity") that constituted deliberate indifference to that Constitutional right; and (3) that the policy or custom caused the violation.

**59.**

Defendants' failure to promote White males was both a persistent and widespread practice attributable to the City that took on the force of law.

**60.**

Plaintiff's failure to promote was caused by an official policy, practice, or custom of the City and/or ordered by a person whose decisions created such policy, practice, or custom.

**61.**

In addition, Defendants Wallis, Still, and Warbington are supervisors and officials who had final policymaking authority regarding the failure to promote Plaintiff so that their discriminatory actions are fairly deemed to represent formal City policies.

**62.**

Because these decision-makers possess final authority to establish municipal policy with respect to the promotions in their Department, the City is liable.

**63.**

In the alternative, the City delegated final policymaking authority to individuals that discriminated against the Plaintiff under their "diversity" in promotions doctrine.

**64.**

Defendants' gender and racial discriminatory acts and omissions caused the Plaintiff to suffer tangible job detriments, as well as mental anguish and personal humiliation, for which he seeks damages in an amount to be determined at trial.

**65.**

Defendants' discrimination was willful and intentional and has directly caused Plaintiff's damages, further entitling him to an award of costs and attorney's fees, in an amount to be determined at trial.

**66.**

Defendants violated Plaintiff's federal rights protected by the federal Constitution and federal statutes and regulations under color of state law, ordinance regulation, custom or usage in violation of 42 U.S.C. § 1983.

**67.**

The conduct of Defendants in failing to promote Plaintiff, based upon his gender and race, is in violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**68.**

This violation of rights was proximately caused by Defendants who were acting under color of state law and local ordinances, regulations, customs and usages in violation of 42 U.S.C. § 1983.

**69.**

Defendants discriminated and retaliated against Plaintiff, a White male, because of his gender and race, in order to promote their discriminatory pursuit of "diversity" in promotions for gender and race within the Department.

**70.**

Defendants' statements about the promotion of Gilovanni amount to direct evidence of discrimination, or are strong indicia of pretext in Plaintiff's failure to promote claim.

**71.**

Defendants ignored Plaintiff's superior qualifications for promotion, and instead, chose to promote Gilovanni for the sole reason of her gender and/or Plaintiff's gender or race.

**72.**

Defendants willfully, wantonly, and intentionally violated Section 1983, 1981 and the equal protection clause, in reckless and callous disregard of Plaintiff's federally protected rights.

**Defendant Chief of Police Wallis**

**73.**

Wallis, sued in his individual capacity, is not entitled to qualified immunity which protects a government official performing a discretionary function.

**74.**

At the time of Plaintiff's' failure to promote claim,  as well as his termination, Wallis was acting in his discretionary capacity to promote and terminate in his Department.

**75.**

Plaintiff has a clearly-established right to be free from discrimination in the public workplace.  Wallis, as a reasonable Chief of Police, knew that failing to

promote the White, male Plaintiff and instead, promoting the female, solely because of her gender and/or Plaintiff's race, violated clearly-established law. Also, subjecting White, male employees to alleged write-ups and poor performance reviews, while similarly situated female and minority or Black employees were not so punished because of race and gender, violated clearly-established law.

**76.**

In the alternative, Wallis had, at the least, mixed motives for his failure to promote and his termination decisions, so that he is not entitled to qualified immunity.

**Defendant Mayor Still:**

**77.**

Still, sued in his individual capacity, is not entitled to qualified immunity which protects a government official performing a discretionary function.

**78.**

At the time of Plaintiff's' failure to promote claim, as well as his termination, Still was acting in his discretionary capacity to promote and terminate in his Department.

**79.**

Plaintiff has a clearly established right to be free from discrimination in the public workplace. Still, as a reasonable elected official, knew that failing to promote the White, male Plaintiff and, instead, promoting the female, solely because of her gender and/or Plaintiff's race, violated clearly-established law. Also, subjecting White, male employees to alleged write-ups and poor performance reviews while similarly situated female and minority or Black employees were not so punished because of race and gender, violated clearly-established law.

**80.**

In the alternative, Defendant Still had, at the least, mixed motives for his failure to promote and termination decisions, so that he is not entitled to qualified immunity.

**Defendant City Manager Warbington:**

**81.**

Warbington, sued in his individual capacity, is not entitled to qualified immunity which protects a government official performing a discretionary function.

**82.**

At the time of Plaintiff's' failure to promote claim, as well as his termination, Warbington was acting in his discretionary capacity to promote and terminate in his Department.

**83.**

Plaintiff has a clearly-established right to be free from discrimination in the public workplace. Warbington, as a reasonable City Manager, knew that failing to promote the White, male Plaintiff and, instead, promoting the female, solely because of her gender and/or Plaintiff's race, violated clearly-established law. Also, subjecting White, male employees to alleged write-ups and poor performance reviews, while similarly-situated female and minority or Black employees were not so punished because of race and gender, violated clearly-established law.

**84.**

In the alternative, Warbington had, at the least, mixed motives for his failure to promote and termination decisions, so that he is not entitled to qualified immunity.

<u>**COUNT II**</u>

**(Race & Gender Discrimination and Retaliation
for discriminatory termination: Violation of Substantive Rights
Guaranteed by 42 U.S.C. § 1981, § 1983 *et seq.,* 14th Amendment of U.S.
Constitution – Against City of Lawrenceville, Wallis, Still and Warbington)**

**85.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**86.**

Defendants discriminatorily terminated Plaintiff on March 15, 2021, because of his race and/or gender.

**87.**

Prior to his termination, Plaintiff spoke out against and opposed the Defendants' stated policy of "diversity" so that he was retaliated against resulting in his retaliatory termination.

**88.**

Defendants treated City and/or Department employees accused of the same or similar infractions as Plaintiff much differently than Defendants treated Plaintiff, because of his race and/or gender.

**89.**

While Plaintiff was investigated and/or disciplined for suspicion of time theft, other female and minority City and/or Department employees suspected of, or even known to have engaged in time theft, were not investigated, let alone disciplined in any way, during the time Plaintiff was employed in the Department.

**90.**

Defendants deprived Plaintiff of rights secured by the Constitution or federal law and these deprivations occurred under color of state law.

**91.**

Defendants violated Plaintiff's federal rights protected by the federal constitution and federal statutes and regulations under color of state law, ordinance regulation, custom or usage in violation of 42 U.S.C. § 1983.

**92.**

The conduct of Defendants in terminating or failing to promote Plaintiff based upon his gender and race is in violation of Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**93.**

This violation of rights was proximately caused by Defendants, who were acting under color of state law and local ordinances, regulations, customs and usages, in violation of 42 U.S.C. § 1983.

**94.**

Defendants discriminated against Plaintiff in violation of 42 U.S.C. §§ 1981 and 1983, *et seq.,* by denying Plaintiff the same contractual rights to employment as enjoyed by female and Black or other minority employees of Defendants.

**95.**

Defendants further discriminated against Plaintiff in violation of 42 U.S.C. §§ 1981 and 1983, *et seq.,* by denying Plaintiff the equal benefits as those enjoyed by female and Black or other minority employees of Defendants.

**96.**

Acting through their officers and supervisors, Defendants engaged in the gender and race discrimination described in this Complaint intentionally or with reckless indifference to the rights of Plaintiff. Defendants' actions were done deliberately and with forethought to punish and discriminate against Plaintiff and were done with callous and/or reckless indifference to Plaintiff's federally protected rights.

**97.**

Defendants violated Plaintiff's rights under the Fourteenth Amendment's Equal Protection Clause.   Specifically, Defendants treated Plaintiff differently, without sufficient cause, when they terminated him because of his gender and race and for his stated opposition to the unfair policy of promotion and retention of employees because of "diversity" in the Department.

**98.**

The City has municipal liability under 42 U.S.C. §§ 1983 & 1981 because Plaintiff shows (1) that his Constitutional rights were violated; (2) that the City had a custom or policy (i.e. the pursuit of "diversity") that constituted deliberate indifference to that Constitutional right; and (3) that the policy or custom caused the violation.

**99.**

Defendants' termination of White, males was both a persistent and widespread practice attributable to the City that took on the force of law.

**100.**

Plaintiff's termination was caused by an official policy, practice, or custom of the City and/or ordered by a person whose decisions created such policy, practice, or custom.

**101.**

Defendants willfully, wantonly, and intentionally violated 42 U.S.C. § 1983, 1981 and the equal protection clause in reckless and callous disregard of Plaintiff's federally protected rights.

**COUNT III**
**(Termination and Retaliation of a Public Employee in Violation of the First and Fourteenth Amendments to the United States Constitution as enforced under 42 U.S.C. § 1983)**

**102.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**103.**

The First and Fourteenth Amendments to the United States Constitution prohibit governmental decision-makers and employers from retaliating against employees who speak out on matters of public concern. Plaintiff has both freedom of speech and due process rights that prevent his unconstitutional termination and retaliation by the Defendants.

**104.**

Plaintiff spoke out about what he believed were serious activities surrounding the pursuit of "diversity" at the expense of Department competency, that someone

should not be promoted just because she is female, that she was only a Detective and was jumping two ranks, which were all in violation of Department policy, regarding the proper promotion process as well as qualifications to be promoted. Plaintiff's discussions with his coworkers and with Ryan Morgan constituted protected exercise of his Constitutional right of free speech and right to petition for redress of grievances.

**105.**

In speaking with his supervisor and co-workers, Plaintiff spoke out on departmental rank and qualifications, as well as security and safety issues that were matters of public concern.

**106.**

The purported "diversity policy" that females were to be preferred to males, that they need not be qualified, that they could jump two ranks from Detective to Sergeant to Lieutenant to Captain is a per se violation of the Constitution and the First and Fourteenth Amendments, because in a democratic society, citizens are allowed to associate and speak freely on matters of public safety and concern.

**107.**

In terminating Plaintiff, Defendants retaliated against Plaintiff because he engaged in protected speech.

**108.**

In the alternative, Plaintiff was retaliated against and ultimately terminated for opposing, or being perceived as opposing, the discriminatory promotion of Gilovanni.

**109.**

Defendants violated Plaintiff's First Amendment rights by terminating him and retaliating against him, culminating in both a retaliatory investigation and a final termination.

**110.**

Defendants terminated Plaintiff for alleged violations that were completely ignored for other similarly situated public employees or which did not result in an investigation, reprimand, or termination.

**111.**

Defendants unfairly ignored conflicts of interest and bias in their investigation procedures and hearing decision-makers, so as to wrongly implicate Plaintiff for reprimand and termination.

**112.**

Defendants' actions have deprived Plaintiff of his right to petition for redress of his grievances and his right to freedom of speech as guaranteed by the First and Fourteenth Amendments to the Constitution of the United States.

**113.**

This violation of rights was proximately caused by Defendants, who were acting under color of state law, and local ordinances, regulations, customs or usages of the City in violation of 42 U.S.C. § 1983.

**114.**

Defendants' unlawful conduct violated clearly-established law.

**115.**

As a direct and proximate result of the Defendants' actions, Plaintiff has suffered damages including the end of his police officer career, emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

**116.**

Defendants undertook their unlawful conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against Defendants.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendants, as follows:

(a)  That Defendants be ordered to formulate, distribute and implement a written policy which does not discriminate or violate in any manner which is a violation of the equal protection clause, First Amendment, 42 U.S.C. § 1983, and 1981;

(b)  That Defendants be ordered to re-hire, compensate, reimburse and make whole the Plaintiff for all benefits he would have received had it not been for Defendants' illegal actions;

(c)  That Plaintiff recover compensatory damages for Defendant's willful violations of the equal protection clause, First Amendment, 42 U.S.C. § 1983 and 1981;

(d)  That Plaintiff be awarded compensatory damages to compensate for the humiliation, pain, suffering and stigma associated with discrimination and retaliation;

(e)  That Plaintiff be awarded punitive damages to punish Defendants for their unlawful actions;

(f)  That Plaintiff recover costs and expenses of litigation including an award of reasonable attorney's fees;

- 31 -

(g)     That Plaintiff recover prejudgment interest;

(h)     That this Court issue a declaratory judgment that the practices complained of are unlawful and void; and

(i)     For such other and further relief as this Court deems just and proper.

## **Jury Demand**

Plaintiff herein demands a trial by jury of all issues in this action.

Dated this 13th day of March 2023.

PANKEY & HORLOCK, LLC

By:   */s/ Larry A. Pankey*_____
        Larry A. Pankey
        Georgia Bar No. 560725
        ***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:  770-670-6250
Facsimile:   770-670-6249
LPankey@PankeyHorlock.com

<u>**CERTIFICATION OF FONT SIZE**</u>

Pursuant to Local rule 5.1(C) of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, of Pankey & Horlock, LLC, attorney for Plaintiff, Barry Honea, hereby certify that the foregoing **Complaint** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 13th day of March 2023.

**PANKEY & HORLOCK, LLC**

By:  */s/ Larry A. Pankey*
Larry A. Pankey
Georgia Bar No. 560725
***Attorneys for Plaintiff***

**THE UNITED STATES DISTRICT COURT**
**FOR THE NOTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **BARRY HONEA,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | **Civil Action File No.** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **CITY OF LAWRENCEVILLE;** | **:** | |
| **TIM WALLIS, in his individual and** | **:** | |
| **official capacity as Chief of Police;** | **:** | |
| **DAVID STILL, in his individual** | **:** | |
| **and official capacity as Mayor;  and** | **:** | |
| **CHUCK WARBINGTON, in his** | **:** | |
| **individual and official capacity as** | **:** | |
| **City Manager,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| _____ | **:** | |

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing

**Complaint** with the Clerk of Court using the CM/ECF system.

Dated this 13th day of March 2023.

**PANKEY & HORLOCK, LLC**


By:  /s/ *Larry A. Pankey*
      Larry A. Pankey
      Georgia Bar No. 560725
      *Attorneys for Plaintiff*

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338-4122
Telephone:  770-670-6250
Facsimile:   770-670-6249
LPankey@PankeyHorlock.com